[Civ. No. 13642. First Dist., Div. One. Jan. 19, 1949.]

HARRY E. SOLEN, Appellant, v. BENJAMIN SINGER et al., Respondents.

Dibble & Jacobs, Elmer P. Delany and Martin J. Jarvis for Appellant.

Bronson, Bronson & McKinnon for Respondents.

WARD, J.—The sufficiency of the evidence to sustain the judgment after verdict by a jury in this case is not questioned.

A narration of part of the evidence is necessary to illustrate the propriety (1) of refusing certain proposed instructions submitted by plaintiff; (2) giving certain instructions on request of defendant, and (3) giving certain instructions on the court's initiative. Plaintiff claims that the giving or refusing of specified instructions misled the jury, prejudiced plaintiff and resulted in a miscarriage of justice.

Plaintiff is in the business of selling poultry. On the date of the accident resulting in the filing of this action after delivery of poultry to defendant's place of business he proceeded with defendant toward the lower floor or basement of the latter's establishment to obtain empty poultry boxes. The entrance used was through two adjacent sidewalk doors which opened onto a stairway leading from the sidewalk to the basement. Defendant testified: "There is a handle that fits flush with the sidewalk, into the iron grating, you lift up that handle and you pull up the left door, not the right door, because they interlock. In other words, you have to pull up the left to get the right. Q. Do I understand there is a little lip or something over the door? A. That is right, and I pulled up the left door first, then the right door, which is on the side of the stairs, I pulled that up and at that time I looked into the store, I was facing the store at the time, and I saw some people in there and one of my butchers was coming out, going to lunch. . . . Q. Where was Mr. Solen when you opened the doors, while you were opening them? A. He was standing to the left of me, near the curb. . . . I started for the store and as I started for the store, I called back and being that I hadn't put the bar up, and I called back to Mr. Solen, told him, 'Don't forget to put the bar up,' and with that, I went into the store. Q. You referred to a bar. Tell us about that, what kind of bar was it and what was it for? A. It was a long bar with two rods, one rod on either end, that fit in the two slots, to keep those doors spread apart. . . . I heard a commotion outside and I think it was one of my butchers informed me that the door had fallen on Mr. Solen's hand. . . . I ran inside the store, got a clean towel and brought it out to him, then I says, 'How did this happen?' I says, 'Didn't you put the bar up?' He says, 'I didn't hear you say nothing about no bar.' . . . Q. Where was this bar that you have referred to hanging, if it was hanging, or where was it with reference to the opening in the sidewalk? A. Right near the curb entrance. . . . Q. And the bar is how long, approximately, do you know? A. Say about five feet, enough

to keep the doors open. . . . Q. How much of the approximately five inches of the bar is exposed to your view? Suppose you were coming up those steps and the bar was hanging there, how much of that bar would you see? A. I would say about four inches.''

Plaintiff testified that he was not familiar with defendant's sidewalk doors and did not notice any iron bar. The record shows that in answer to the following question: ''Well, it is a fact, isn't it, that prior to the time of this accident, you knew that when sidewalk doors were open, there were two little holes in there for the purpose of putting an iron bar in place and that that iron bar kept or would tend to keep the doors from closing, isn't that true?'' plaintiff answered: ''Yes.'' There is further testimony as follows: ''. . . [Attorney for Plaintiff] Q. Now, before the recess, Mr. Solen, you said that Mr. Singer went out to the sidewalk with you to the location of these doors. You recall that, do you not? A. Yes. Q. And I think you said he opened up the doors, both of them? A. Yeah, one at a time. Q. One at a time, and after he had opened the door, did you or did he or did both of you go down the stairway into the basement? A. We both went into the basement. Q. And who went first? A. Mr. Singer . . . He [the defendant] went directly straight to the stairs that we went down, went there, and I took my coat off, my hat, in order to make myself more, you know, convenient to carry those boxes, and I grabbed the boxes, one in my right hand, one in my left, and—— Q. Would you just stop there for a minute, please? I want you to describe to the jury the size of those boxes and tell them approximately what each box weighed, if you are able to. A. Well, I presume the boxes is around 18 or 20 inches in width and about 30 inches in length, covered with wires. If any one of you have seen those kind of boxes, approximately, I would say, they weigh between 8 and 10 pounds average. Q. You say you took two boxes up, is that correct? A. Yes. Q. How did you hold those boxes? A. I had one in my right hand, one in my left. Q. What did you do next? A. When I came to the stairway, being a very steep stairway, and if I hadn't mistaken, there was a two by six or wider, and I let go with my left hand, and with my right hand on the bottom, walking like I would walk now, you know, up. Q. Sort of sideways? A. That is the only way you could carry those bulky boxes. . . . That is the only way you could go and walk up, and as I was halfway up, some-

thing struck me in my right shoulder. Q. Your right shoulder? A. Yeah. Well, I was aware that it was one of those doors, you know, and in an instant or a moment, as you all know, when an accident happens, I dropped that box what I held on the bottom of it, and this one flew outside, and I was fishing for the air, you know, for anything, not to fall down from those steps back to the basement, and the door fell, you know, from the jar of my shoulder I couldn't hold it, and with my hand, and bumped again—I was aware, you know, that is, my hand was numb for a minute, I have to climb up somewhere outside to get for aid. You know, I couldn't holler, and there was a slide there on the next half of the side, where they evidently slide in merchandise, you know, like a slide in the park, and I tried to climb on that, to get hold of the two side railings, little ones, and it didn't take me a flash of a minute, you know, to get on top of it, and I grabbed a handkerchief and tied it on my hand, to try to stop the bleeding. Q. You say something struck you on the shoulder, is that correct? A. Yes. Q. Now, will you quietly tell us what shoulder it struck? A. The right shoulder. Q. At that time, as you were coming up the stairs, the left hand was leading and the right was coming behind, is that correct? A. That is right. Q. You felt a blow to your right shoulder? A. Yes. Q. Did that affect your balance in any way? A. It did. . . . Q. Were you conscious of a blow to your hand? A. Yes, it was a blow, because the hand was numb.''

From a review of the pertinent facts it does not appear that any attempt was made to establish the immediate reason for the falling of one of the trap doors other than that the bar which would have prevented the door from closing was not in place.

The court gave the following instruction on contributory negligence: ''Now, as to contributory negligence, ladies and gentlemen. You are instructed that when the negligence of the injured party contributed proximately to the injuries complained of, the law will afford no redress. If, therefore, you find in this case that the plaintiff was negligent and that such negligence contributed proximately to the resulting accident, I instruct you that plaintiff cannot recover against the defendant. In order to avoid injury to himself, plaintiff was bound to have exercised reasonable care to avoid the same, that is, he was bound to use such care and diligence as a reasonable and prudent person would have exercised under like circumstances. Unless it is shown by or may be inferred from the

evidence offered by plaintiff, such negligence is a matter of defense to be proved affirmatively by defendants. It is not incumbent upon the plaintiff to prove that he was free from contributory negligence. Contributory negligence cannot be presumed from the mere fact of injury.'' The foregoing instruction is not a formula instruction—one conditionally *directing* a verdict for one of the parties—in which every requisite legal conclusion and factual finding to reach such verdict should be mentioned. (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165 [153 P.2d 338]; *Douglas* v. *Southern Pacific Co.*, 203 Cal. 390 [264 P. 237].) The instruction was only designed to inform the jury of the general nature of contributory negligence.

The quoted instruction is attacked on the ground that it does not state the quantum of proof necessary to prove contributory negligence. Elsewhere the jury was instructed relative to the affirmative of an issue, the rules covering the weight, quality, effect and value of evidence, presumptions, preponderance of evidence—in fact, all necessary instruction of law covering the facts of the case.

■ Plaintiff requested two instructions which were refused: ''You are instructed that defects which are ordinarily plainly visible do not necessarily preclude a party who is injured thereby from recovering damages for negligence, provided a reasonably prudent person, exercising due precaution, under similar circumstances, would not have observed the defect.'' ''You are instructed that while one is ordinarily required, in the exercise of reasonable prudence, to use his senses of sight and hearing with due diligence, the mere failure to observe a visible defect which causes injuries, does not necessarily constitute contributory negligence.'' The word ''defects'' as applied to the flap doors could only mean a lack of mechanical parts which would not permit the doors and stairway to be maintained safely. There was no flaw in mechanism. All of the necessary parts of the door were present. The difficulty was in the use of the instrumentality. The proposed instructions were properly refused as inapplicable to the issues raised. The issue raised in the complaint refers to the maintenance and control of ''sidewalk doors.'' The evidence shows that the injury was due to a failure to use the crossbars. ■ The court instructed that the defendant was charged with negligence and gave the ordinary definition thereof. As applied to the facts of the present case, the jury was instructed that, in going down defendant's basement

by way of his sidewalk doors, plaintiff was bound to use such care and diligence as a reasonable and prudent person would have exercised. If they believed plaintiff's testimony they would have found for plaintiff. The fact that they returned a verdict for defendant implies a finding that defendant's version of the events prior to the accident was true. Whether it was defendant's or plaintiff's negligence was purely a question of fact and the jury was sufficiently instructed thereon.

In *Locke* v. *Red River Lbr. Co.*, 65 Cal.App.2d 322 [150 P.2d 506], a plaintiff testified without reservation that she did not know of a defect in a floor. It was held that the trial court's finding that plaintiff was not guilty of contributory negligence should be upheld. In the present case plaintiff knew that sidewalk trap doors were usually kept from collapse or falling by the use of the iron bar.

■ Plaintiff claims that the following instruction requested by defendant and given by the court is misleading: ''You are instructed that there is no obligation on the part of the proprietor of business premises to give warning of an obvious danger or one which should have been perceived by the invitee through the ordinary use of his own senses.'' Four tests for recovery are outlined in *Morton* v. *Manhattan Lunch Co.*, 41 Cal.App.2d 70, 72 [106 P.2d 212] : ''Hence, a recovery cannot be had when the owner or occupant has no knowledge of the danger, where the plaintiff has such knowledge, where the danger is obvious, or where the plaintiff is guilty of contributory negligence.'' Whether the lack of the bar hanging in its usual place was obvious was a question of fact, but plaintiff proceeds further and argues that all the tests mentioned for recovery in *Morton* v. *Manhattan Lunch Co.*, *supra*, were not included in the instruction and that it is incomplete. The tests outlined in the Morton case are not cumulative, but the existence and proof of one is sufficient to defeat recovery by an invitee. Assuming that the defendant had knowledge of the possible danger, there is evidence from which a reasonable inference may be drawn that the plaintiff was guilty of contributory negligence. It is also suggested that there is no knowledge of danger mentioned in the instructions. *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647 [122 P.2d 576] is cited as an authority in the closing brief. Knowledge followed by forgetfulness (*Neel* v. *Mannings, Inc.*, *supra*) is not claimed in this case.

■ The last instruction that is necessary to consider reads: ''You are instructed that if you are unable to deter-

mine from the evidence in this case the cause of or the manner in which plaintiff sustained his alleged injuries, plaintiff cannot recover and your verdict must be in favor of the defendant.'' Plaintiff contends that this was misleading in that it assumes a sole cause of the injury by the words ''the cause'' and ''the manner,'' and that it thus conflicts with the following instruction: ''If you find that defendant was negligent in the maintenance of the sidewalk doors or in not putting up the iron bar to keep the doors from falling down and that such negligence continued and existed up to the time of the injury to plaintiff, if any, the concurring negligent act by some third person causing the injury is not to be regarded as an independent act of negligence, but the two concurring acts of negligence are the proximate cause of the injury.'' Plaintiff interprets ''the cause'' as being related to the force which caused the door to fall down, whereas ''the manner'' is related to undisputed evidence that plaintiff's injury resulted when the door fell on him, for he argues: ''That said instruction . . . assumes an uncertainty as to 'the manner' in which appellant was injured and no uncertainty as to the manner of injury appears from any evidence established in this case.''

The instruction should not be interpreted as assuming that there was a sole cause of the injury. It will be noted that the instruction merely says, ''if you are unable to determine from the evidence in this case the cause.'' The ''cause'' may have been the concurring negligent acts of the parties and a third person. The criticized instruction is consistent with that given on the possible concurring negligent acts of a third person. The facts are that although plaintiff was aware that iron bars are generally used to hold sidewalk doors open, he attempted to ascend a steep stairway with two large boxes in his hands. While in this position he was unable to extricate himself without injury when the loose door fell.

There is no basis for plaintiff's complaint that the instruction as to ''the manner'' misled the jury, resulting in prejudicial error, since under this instruction the jury could properly accept the undisputed evidence that plaintiff was injured by the falling of the door, and if they found ''the cause'' to be the absence of the iron bar—due to defendant's negligence and not plaintiff's contributory negligence—plaintiff could recover.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.