[No. S139184. Apr. 3, 2008.]

WILLIAM KEITH JOHNSON, Plaintiff and Appellant, v.
AMERICAN STANDARD, INC., Defendant and Respondent.

## COUNSEL

Metzger Law Group, Raphael Metzger, Gregory A. Coolidge and Peter F. Klein for Plaintiff and Appellant.

Steven G. Ingram and Sharon J. Arkin for Consumer Attorneys for California as Amicus Curiae on behalf of Plaintiff and Appellant.

Munger, Tolles & Olson, Jeffrey L. Bleich, Kathleen M. McDowell, Paul J. Watford, Blanca Fromm Young and Aimee Feinberg for Defendant and Respondent.

Hugh F. Young, Jr.; Martin, Bischoff, Templeton, Langlset & Hoffman, Jonathan M. Hoffman; Drinker Biddle & Reath and Alan Lazarus for Product Liability Advisory Council, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Horvitz & Levy, David M. Axelrad, Mary-Christine Sungaila; National Chamber Litigation Center, Inc., and Robin S. Conrad for Chamber of Commerce of the United States of America, American Chemistry Council, American International Companies, ExxonMobil Corporation, The Farmers Insurance Group of Companies and Honeywell International, Inc., as Amici Curiae on behalf of Defendant and Respondent.

Duane Morris, Robert L. Byer, Paul J. Killion and Kathryn K. Schutz for FLSMIDTH, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

CHIN, J.—This product liability action raises a question of first impression in California: whether we should adopt the "sophisticated user" doctrine and defense to negate a manufacturer's duty to warn of a product's potential danger when the plaintiff has (or should have) advance knowledge of the product's inherent hazards. The defense is specifically applied to plaintiffs who knew or should have known of the product's hazards, and it acts as an exception to manufacturers' general duty to warn consumers. (See Rest.2d Torts, § 402A.)

The federal courts have adopted the doctrine as an affirmative defense in diversity cases, and they predict that we will do the same. (*In re Air Crash Disaster* (6th Cir. 1996) 86 F.3d 498, 522; *In re Related Asbestos Cases* (N.D.Cal. 1982) 543 F.Supp. 1142, 1151 (*In re Asbestos*).) For the reasons discussed below, we conclude that the sophisticated user defense applies in California. We affirm the Court of Appeal judgment and remand for further proceedings consistent with this holding.

## FACTS AND PROCEDURAL HISTORY

Plaintiff William Keith Johnson is a trained and certified heating, ventilation, and air conditioning (HVAC) technician. He began working in the HVAC field in 1996 when he first received training at ITT Technical Institute, where he completed a yearlong course on HVAC systems. Plaintiff continued to work as an HVAC technician until 2002. He received additional training and certifications, both on and off the job, including an Environmental Protection Agency (EPA) "universal" certification after he passed a five-part exam. "Universal" certification is the highest certification an HVAC technician can obtain from the EPA, and it allows those certified to work on, and purchase, refrigerant for large commercial air conditioning systems. (40 C.F.R. §§ 82.154(m), 82.161 (2007).) "Universally" certified technicians are trained professionals, and their tasks include brazing (welding) and part replacement.

Large air conditioning systems commonly use R-22, a hydrochlorofluorocarbon refrigerant. The refrigerant can decompose into phosgene gas when exposed to flame or high heat, as could happen while a technician is brazing air conditioner pipes containing residual refrigerant. Exposure to phosgene gas may cause numerous health problems, and manufacturers and HVAC technicians have generally known of the dangers this exposure could cause since as early as 1931. The dangers and risks associated with R-22 are noted on material safety data sheets (MSDS's). (Cal. Code Regs., tit. 8, § 5194,

subd. (g)(1), (2).)[1] The purpose of MSDS's is to inform those who may come into contact with potentially hazardous chemicals about their dangers. (See Cal.Code Regs., tit. 8, § 5194, subd. (g).) Employers are required to use the MSDS's to train and educate their employees about the chemicals and dangers to which they may be exposed on the job. (See Cal. Code Regs., tit. 8, § 5194, subd. (h).)[2] Among other things, employers are required to tell employees where they can find the MSDS's, how to read them, how to detect the presence of dangerous materials, and how to protect against possible health hazards from those materials. (Cal. Code Regs., tit. 8, § 5194, subd. (h)(2)(C), (D), (E), (F).) Beginning in 1997, every time he purchased the refrigerant R-22, plaintiff received, and sometimes read, an MSDS.

In June 2003, plaintiff filed his first amended complaint, suing various chemical manufacturers, chemical suppliers, and manufacturers of air conditioning equipment, including defendant American Standard, Inc.[3] One of the systems on which plaintiff worked in 2002 was located at the Bank of America Del Amo branch. Plaintiff specifically alleged that he brazed refrigerant lines on an evaporator defendant manufactured in 1965 that contained R-22 refrigerant, creating and exposing him to phosgene gas. Plaintiff alleged that the maintenance and repairs he performed on air conditioning units in the normal course of his job created and exposed him to phosgene gas, causing him to develop pulmonary fibrosis. The causes of action against defendant are based on its alleged failure to warn of the potential hazards of R-22 exposure. They include negligence, strict liability failure to warn, strict liability design defect, and breach of implied warranties.

In each cause of action, plaintiff's theory was that defendant knew that servicing the evaporator would create harmful phosgene gas, but defendant failed to provide plaintiff with an adequate warning. (See *Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 1002 [281 Cal.Rptr. 528, 810 P.2d 549] (*Anderson*).) As the Court of Appeal observed, plaintiff contended that "a warning would be adequate if it informed users that brazing refrigerant lines can result in creation of phosgene, that phosgene inhalation can result in potentially fatal lung disease, that phosgene can be detected

---

[1] In July of 2004, California Code of Regulations, title 8, section 5194, subdivision (g), was amended in several places. The changes, however, added little substance to what was required of employers, and so the current requirements accurately indicate the obligations plaintiff's employers had and the information that plaintiff should have known about the product when he was exposed to it.

[2] In July 2004, California Code of Regulations, title 8, section 5194, subdivision (h), was amended. Like those amendments made to subdivision (g), the effects of the amendment on subdivision (h) in this case are minimal.

[3] Plaintiff has settled or dismissed all of his claims against other defendants, except for a claim against one refrigerant manufacturer, and one supplier of refrigerant. Those parties are not involved in the present appeal.

through its fresh-cut-grass smell, changes in flame color during brazing, or physical symptoms like burning eyes or shortness of breath, and that users should wear respiratory protection while brazing and stop brazing on detection of phosgene."

In May 2004, defendant moved for summary judgment on two grounds. First, the company claimed it had no duty to warn about the potential hazards of R-22 because it did not manufacture that refrigerant; it only manufactured the evaporator that contained the refrigerant. Defendant also claimed it had no duty to warn about the risks of R-22 exposure because it could assume that the group of trained professionals to which plaintiff belonged, and plaintiff himself, were aware of those risks. As the Court of Appeal observed, "the undisputed facts were that under federal law, HVAC technicians who work on commercial equipment must be certified by the EPA with 'universal' certification, which is granted after an exam. They are 'trained professionals.' Most HVAC technicians also have some kind of trade or professional training. [Plaintiff] had universal certification and had completed a one-year course of study in HVAC systems at ITT Technical Institute."[4] In September 2004, the trial court granted defendant's motion for summary judgment and entered judgment in its favor on both grounds. The Court of Appeal affirmed the trial court's judgment on the sole ground that the sophisticated user defense applies in California. The court held that "a manufacturer cannot be liable to a sophisticated user of its product for failure to warn of a risk, if a sophisticated user should reasonably know of that risk." The Court of Appeal held that because plaintiff's theory was the same in all causes of action, i.e., product liability through the failure to warn, the sophisticated user defense should apply to plaintiff's complaint in its entirety.

The Court of Appeal next addressed whether defendant was entitled to summary judgment "on the theory that there was no duty to warn because the danger at issue was one generally known to members of the profession, one which [plaintiff] 'could reasonably have been expected to know' [citation] or . . . [that defendant] had 'reason to expect' that HVAC technicians would know of the risk."

The court observed that there was "undisputed evidence that HVAC technicians could reasonably be expected to know of the hazard of brazing refrigerant lines." Despite plaintiff's testimony that he had read the MSDS for

---

[4] Plaintiff has asked this court to take judicial notice of several regulations and regulatory interpretations of the federal Hazard Communication Standard by the United States Department of Labor, Occupational Safety and Health Administration, and has included in his request several exhibits detailing the problems that exposure to hazardous chemicals may cause and the labeling requirements for shipped containers that house the chemicals. Defendant does not oppose the request, and we grant it. (Evid. Code, §§ 452, 453.)

R-22, but did not understand that he should avoid heating it, the Court of Appeal concluded that there was undisputed evidence from the relevant declarations and depositions of HVAC technicians that the EPA requires those professionals "to understand the decomposition products of refrigerants at high temperatures." The court noted that " 'the study guide informed users that refrigerant in contact with high heat can form dangerous substances, and the Material Safety Data Sheet for R-22 informed technicians that the product can decompose when in contact with heat, releasing toxic gases.' " The court affirmed the summary judgment in defendant's favor. As noted, we granted review to determine whether the sophisticated user defense should apply in California.

## DISCUSSION

### A. *Procedural Background; Summary Judgment*

Because plaintiff appealed from the trial court's order granting defendant summary judgment, we independently examine the record in order to determine whether triable issues of fact exist to reinstate the action. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) In this action, therefore, we must determine whether defendant has shown that plaintiff has not established a prima facie case of negligence or strict liability, "a showing that would forecast the inevitability of a nonsuit" in defendant's favor. (*Id.* at p. 768.) "If so, then under such circumstances the trial court was well justified in awarding summary judgment to avoid a useless trial." (*Ibid.*) In performing our de novo review, we view the evidence in the light most favorable to plaintiff as the losing party. (*Ibid.*) In this case, we liberally construe plaintiff's evidentiary submissions and strictly scrutinize defendant's own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff's favor. (*Ibid.*)

### B. *Development of the Sophisticated User Defense*

#### 1. *Background*

Generally speaking, manufacturers have a duty to warn consumers about the hazards inherent in their products. (*Anderson, supra,* 53 Cal.3d at p. 1003.) The requirement's purpose is to inform consumers about a product's hazards and faults of which they are unaware, so that they can refrain from using the product altogether or evade the danger by careful use. (*Ibid.*) Typically, under California law, we hold manufacturers strictly liable for injuries caused by their failure to warn of dangers that were known to the scientific community at the time they manufactured and distributed their product. (*Ibid.*; see also *Carlin v. Superior Court* (1996) 13 Cal.4th 1104, 1108

[56 Cal.Rptr.2d 162, 920 P.2d 1347] (*Carlin*).) *Anderson* made it clear that "[w]hatever may be reasonable from the point of view of the manufacturer, the user of the product must be given the option either to refrain from using the product at all or to use it in such a way as to minimize the degree of danger." (*Anderson, supra*, 53 Cal.3d at p. 1003.) *Anderson* explained that the rule of strict liability imposed on all manufacturers for their failure to warn of known or reasonably scientifically knowable risks was one that we had previously required of drug manufacturers. (*Id.* at p. 1000; *Carlin, supra*, 13 Cal.4th at p. 1109.) Conversely, when a sufficient warning is given, "the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." (Rest.2d Torts, § 402A, com. j, p. 353.)

■ The sophisticated user defense exempts manufacturers from their typical obligation to provide product users with warnings about the products' potential hazards. (*In re Asbestos, supra*, 543 F.Supp. at p. 1151.) The defense is considered an exception to the manufacturer's general duty to warn consumers, and therefore, in most jurisdictions, if successfully argued, acts as an affirmative defense to negate the manufacturer's duty to warn. (*Ibid.*)

Under the sophisticated user defense, sophisticated users need not be warned about dangers of which they are already aware or should be aware. (See 4 Shearman & Redfield, A Treatise on the Law of Negligence (rev. ed. 1941) Manufacturers and Vendors, § 656, p. 1576.) Because these sophisticated users are charged with knowing the particular product's dangers, the failure to warn about those dangers is not the legal cause of any harm that product may cause. (Owen, Products Liability Law (2005) § 9.5, p. 599.) The rationale supporting the defense is that "the failure to provide warnings about risks already known to a sophisticated purchaser usually is not a proximate cause of harm resulting from those risks suffered by the buyer's employees or downstream purchasers." (*Ibid.*) This is because the user's knowledge of the dangers is the equivalent of prior notice. (*Billiar v. Minnesota Mining and Mfg. Co.* (2d Cir. 1980) 623 F.2d 240, 243 ["[N]o one needs notice of that which he already knows."].)

As we explain further below, the sophisticated user defense evolved out of the Restatement Second of Torts, section 388 (section 388) and the obvious danger rule, an accepted principle and defense in California. (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 64 [107 Cal.Rptr. 45, 507 P.2d 653]; *Bojorquez v. House of Toys, Inc.* (1976) 62 Cal.App.3d 930, 933–934 [133 Cal.Rptr. 483] (*Bojorquez*).) In addition, as we explain, the defense applies equally to strict liability and negligent failure to warn cases. The duty to warn is measured by what is generally known or should have been known to the

class of sophisticated users, rather than by the individual plaintiff's subjective knowledge. (See, e.g., *Humble Sand & Gravel, Inc. v. Gomez* (Tex. 2004) 146 S.W.3d 170, 183.)

## 2. *Section 388 and the Obvious Danger Rule*

Section 388 provides that a supplier of goods is liable for physical harm the goods cause if the supplier knows, or should know, the items are likely to be dangerous, fails to reasonably warn of the danger, and "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." Comment k to section 388, subdivision (b), is entitled "*When warning of defects unnecessary*," and it emphasizes this point. It declares that although the condition may be one that only specialists would perceive, the supplier is required to inform the users of the risk only if the manufacturer has "no reason to believe that those who use it will have such special experience as will enable them to perceive the danger." (§ 388, subd. (b), com. k, p. 307.)

Courts have interpreted section 388, subdivision (b), to mean that if the manufacturer reasonably believes the user will know or should know about a given product's risk, the manufacturer need not warn that user of that risk. (*Martinez v. Dixie Carriers, Inc.* (5th Cir. 1976) 529 F.2d 457, 464–465; *Lockett v. General Electric Company* (E.D.Pa. 1974) 376 F.Supp. 1201, 1208–1209, affd. (3d Cir. 1975) 511 F.2d 1394; *Bryant v. Hercules Incorporated* (W.D.Ky. 1970) 325 F.Supp. 241, 247.) This is "especially [true] when the user is a professional who should be aware of the characteristics of the product." (*Strong v. E. I. Du Pont de Nemours Co., Inc.* (8th Cir. 1981) 667 F.2d 682, 687.)

Other jurisdictions that have adopted the sophisticated user defense have cited section 388 and the obvious danger rule as a basis for doing so. (E.g., *Akin v. Ashland Chemical* (10th Cir. 1998) 156 F.3d 1030, 1037 [no need to warn a knowledgeable purchaser like the United States Air Force about the dangers of low-level chemical exposure]; *Strong v. E. I. Du Pont de Nemours Co., Inc., supra*, 667 F.2d at pp. 686–687 [natural gas pipe manufacturer had no duty to warn a natural gas utility, or the utility's employee, of well-known gas line dangers].) Other courts have employed the same principle to justify the sophisticated user defense without specifically citing the Restatement Second of Torts. (E.g., *Antcliff v. State Emp. Credit Union* (1982) 414 Mich. 624 [327 N.W.2d 814, 818–819, 821] [scaffolding manufacturer had no duty to give information and instruction about safe rigging procedure to a professional painter experienced in rigging procedure].) While this court has not expressly adopted a sophisticated user defense, it has adopted section 388 as law in California. (See *Stevens v. Parke, Davis & Co., supra*, 9 Cal.3d at p. 64.)

California law also recognizes the obvious danger rule, which provides that there is no need to warn of known risks under either a negligence or strict liability theory. (*Bojorquez, supra*, 62 Cal.App.3d at pp. 933–934; *Holmes v. J. C. Penney Co.* (1982) 133 Cal.App.3d 216, 220 [183 Cal.Rptr. 777].) In *Bojorquez*, a child bought a slingshot from a 7-Eleven store and used it to shoot a projectile at the plaintiff, injuring one of her eyes. (*Bojorquez, supra*, 62 Cal.App.3d at p. 932.) The plaintiff sued the slingshot's retailer and wholesaler, claiming several causes of action, including strict liability for failing to warn about a slingshot's dangers. (*Ibid.*) The trial court dismissed her claim, and the Court of Appeal affirmed the judgment, observing that "the seller does not need to add a warning when 'the danger, or potentiality of danger[,] is generally known and recognized.' . . . There is no need to include a warning; the product is not defective because it lacked a warning; there is no cause of action in strict liability." (*Id.* at pp. 933–934, quoting Rest.2d Torts, § 402A, com. j, p. 353.) Similarly, *Holmes v. J. C. Penney Co., supra*, 133 Cal.App.3d at page 220, relying on *Bojorquez*, held that the dangers and potential harms associated with firing a pellet gun were obvious and did not require the seller to warn about them. (See also *Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362 [13 Cal.Rptr.2d 811] [manufacturer of intrauterine device not strictly liable to patient who died after doctors implanted manufacturer's product: "We are aware of no authority which requires a manufacturer to warn of a risk which is readily known and apparent to the consumer, in this case the physician. Further, if the risk . . . is universally known in the medical profession, the failure to warn the physician of that risk cannot be the legal cause of the decedent's death."].)

██  Although the Court of Appeal was aware that "no California court has squarely adopted the [sophisticated user] doctrine," the court observed that "it is a natural outgrowth of the rule that there is no duty to warn of known risks or obvious dangers." As the Court of Appeal reasoned, the sophisticated user defense simply recognizes the exception to the principle that consumers generally lack knowledge about certain products, for example, heavy industrial equipment, and hence the dangers associated with them are not obvious. For those individuals or members of professions who do know or should know about the product's potential dangers, that is, sophisticated users, the dangers should be obvious, and the defense should apply. Just as a manufacturer need not warn ordinary consumers about generally known dangers, a manufacturer need not warn members of a trade or profession (sophisticated users) about dangers generally known to that trade or profession.

### 3. Fierro v. International Harvester Co.

One California court has, in dictum, addressed the sophisticated user defense in the strict liability context, and the court's decision has been the

focus of federal jurisprudence discussed further below. (*Fierro v. International Harvester Co.* (1982) 127 Cal.App.3d 862 [179 Cal.Rptr. 923] (*Fierro*).) The plaintiff, Fierro, sued International Harvester Company (International), because it manufactured the truck her husband was driving when he crashed and died. (*Id.* at p. 865.) International manufactured skeleton trucks that came with only an engine, cab and chassis, which allowed purchasers to complete or add to the truck as they saw fit. (*Ibid.*) Luer Packaging Company (Luer) purchased one of these trucks from International and installed a refrigeration unit on the chassis. (*Ibid.*) Five years later, the plaintiff's husband was driving the truck in the course and scope of his job with Luer. The truck overturned after blowing a tire, crashed, skidded for a distance, spilled fuel, and caught fire. (*Ibid.*)

The plaintiff and Luer's workers' compensation insurance carrier brought a wrongful death action seeking to impose liability on International for negligence and manufacturer's strict liability. (*Fierro, supra,* 127 Cal.App.3d at p. 865.) The evidence at trial focused on "the location of the fuel tank and filler necks and their exposure to damage when the truck struck the guard rail and turned over." (*Ibid.*) During trial, the plaintiff alleged that International had to warn Luer that attaching power cables from the refrigerator unit to the truck's battery could create a fire hazard. (*Id.* at p. 866.) Even though these were not dangers an average consumer would perceive, the trial court refused to instruct the jury on the issue of failure to warn. (*Ibid.*) The Court of Appeal affirmed the trial court's judgment after concluding that the · court was justified in not instructing the jury on the failure to warn because the plaintiff had not properly raised that issue at trial. (*Ibid.*)

In dictum, the Court of Appeal explained that International, as the defendant manufacturer, need not warn the purchaser, Luer, because "[a] sophisticated organization like Luer does not have to be told that gasoline is volatile and that sparks from an electrical connection or friction can cause ignition." (*Fierro, supra,* 127 Cal.App.3d at p. 866.) The court observed that "[t]here was no evidence that any feature of the skeleton unit was unique or contained any component or capability which was known to International and which was not known to or readily observable by Luer. The fuel tanks and the filler spouts were patently exposed, and they were obviously designed to hold gasoline. The properties and propensities of that volatile liquid are a matter of common knowledge. Nor did Luer need to be advised of the necessity to cover and protect the exposed fuel tanks before operating the unit under circumstances which could subject them to damage." (*Ibid.*) In other words, the lack of a warning "to Luer did not substantially or unreasonably increase any danger that may have existed in using the [truck]." (*Ibid.*) The Court of Appeal impliedly adopted the sophisticated user defense in rationalizing its affirmance of the trial court's judgment.

### 4. *Federal Decisions*

The federal courts took notice of *Fierro* and predicted that this court would eventually adopt the sophisticated user defense. In an important products liability action filed in the Northern District of California, the plaintiffs "were insulators and shipyard workers employed by the United States Navy during varying periods. In the course of their employment with the Navy, plaintiffs were allegedly exposed to asbestos products manufactured by defendants. Plaintiffs claim[ed] that defendants' asbestos products caused injury to them." (*In re Asbestos, supra*, 543 F.Supp. at p. 1150.) The defendants claimed "that the Navy was negligent in failing to provide plaintiffs with a safe work place and that this negligence constituted a superseding cause sufficient to relieve defendants of liability." (*Ibid.*) The court agreed that the sophisticated user defense applied to strict liability claims and refused to grant the plaintiffs' motion to strike the defense. (*Ibid.*) The court believed the highest California court would permit the defense. The federal court recognized, however, that under California law the plaintiffs could undercut the application of the sophisticated user defense by demonstrating that the defendants might have foreseen the Navy's alleged negligence, and so it should not absolve them of liability. (*Id.* at pp. 1150–1151.)[5]

*In re Asbestos, supra*, 543 F.Supp. at page 1151, pointed out that the defendants also asserted "that the Navy was a 'sophisticated user' of asbestos products—that is, that the Navy, as an employer, was as aware of the dangers of asbestos as were defendants and that the Navy nonetheless misused the products, thereby absolving the defendants of liability for failure to warn the Navy's employees of the products' dangers." Various federal courts that have applied state law under diversity jurisdiction have allowed the sophisticated user defense. (See, e.g., *In re Air Crash Disaster, supra*, 86 F.3d at pp. 521–522 [applying sophisticated user defense in finding no negligence for manufacturer's failure to warn of danger in aircraft warning system]; *Bradco Oil & Gas Co. v. Youngstown Sheet & Tube Co.* (5th Cir. 1976) 532 F.2d 501, cert. den. (1977) 429 U.S. 1095 [51 L.Ed. 542, 97 S.Ct. 1111] [sophisticated user defense applied in a strict liability case]; *In re Asbestos, supra*, 543 F.Supp. at p. 1151.) Although federal circuit and district court decisions interpreting state law are not binding on our court, we find their reasoning persuasive in adopting the sophisticated user defense in our jurisdiction. (See *People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].)

---

[5] The federal court's prediction that this court would adopt the sophisticated user defense on the condition that a plaintiff could negate it by showing that the sophisticated user's misuse of the product was foreseeable is not at issue here, and we do not address it at this time. (See *In re Asbestos, supra*, 543 F.Supp. at p. 1151.)

### 5. *The* Selma *Decision*

Plaintiff asserts that we should adopt the reasoning of *Selma Pressure Treating Co. v. Osmose Wood Preserving Co.* (1990) 221 Cal.App.3d 1601 [271 Cal.Rptr. 596], which he contends rejected the sophisticated user defense. But a close reading of *Selma* indicates that the court did not reject the defense at all. The issue in *Selma* was whether a manufacturer had to warn the general public of the risks of damage its chemicals caused that the ordinary user could not reasonably be expected to know. *Selma* acknowledged the sophisticated user defense through its pronouncement that the existence of *unknown* dangers gives rise to the duty to warn. (*Id.* at p. 1623.) *Selma* recognizes that a defendant may introduce evidence demonstrating that "a user has sufficient expertise to be charged with the knowledge of risks associated with a particular product." (*Ibid.*) *Selma*'s holding, therefore, is consistent with the sophisticated user defense and the other case law discussed thus far. Nothing in *Selma*'s reasoning persuades us not to adopt the sophisticated user defense, and, to the extent that it might cause confusion, we would disapprove of its reasoning.

### C. *Public Policy*

Not all warnings, however, promote user safety. Requiring manufacturers to warn their products' users in all instances would place an onerous burden on them and would " 'invite mass consumer disregard and ultimate contempt for the warning process.' " (*Finn v. G. D. Searle & Co.* (1984) 35 Cal.3d 691, 701 [200 Cal.Rptr. 870, 677 P.2d 1147], quoting Twerski et al., *The Use and Abuse of Warnings in Products Liability—Design Defect Litigation Comes of Age* (1976) 61 Cornell L.Rev. 495, 521; see also Rest.3d Torts, Products Liability, § 2, com. j, p. 31 ["[R]equiring warnings of obvious or generally known risks could reduce the efficacy of warnings generally."].) The sophisticated user defense fits into this understanding of the role of warnings; it helps ensure that warnings will be heeded.

In addition, numerous generally safe products exist that can become hazardous when the proper precautions are not followed. Although manufacturers are responsible for products that contain dangers of which the public is unaware, they are not insurers, even under strict liability, for the mistakes or carelessness of consumers who should know of the dangers involved. (*Anderson, supra*, 53 Cal.3d at p. 994.) Accordingly, we adopt the defense in California. We now examine the defense's exact contours.

### D. *How the Defense Operates in California*

#### 1. *A "Should Have Known" Standard*

■ A manufacturer is not liable to a sophisticated user of its product for failure to warn of a risk, harm, or danger, if the sophisticated user knew or should have known of that risk, harm, or danger. It would be nearly impossible for a manufacturer to predict or determine whether a given user or member of the sophisticated group actually has knowledge of the dangers because of the infinite number of user idiosyncrasies. For example, given users may have misread their training manuals, failed to study the information in those manuals, or simply forgotten what they were taught. However, individuals who represent that they are trained or are members of a sophisticated group of users are saying to the world that they possess the level of knowledge and skill associated with that class. If they do not actually possess that knowledge and skill, that fact should not give rise to liability on the part of the manufacturer.

Under the "should have known" standard there will be some users who were actually unaware of the dangers. However, the same could be said of the currently accepted obvious danger rule; obvious dangers are obvious to most, but are not obvious to absolutely everyone. The obvious danger rule is an objective test, and the courts do not inquire into the user's subjective knowledge in such a case. In other words, even if a user was truly unaware of a product's hazards, that fact is irrelevant if the danger was objectively obvious. (3 American Law of Products Liability (3d ed. 1993) Warnings, § 32.66, pp. 113–114; *Bowersfield v. Suzuki Motor Corp.* (E.D.Pa. 2000) 111 F.Supp.2d 612, 622; see *Solen v. Singer* (1949) 89 Cal.App.2d 708, 714 [201 P.2d 869] [there is no obligation " 'to give warning of an obvious danger or one *which should have been perceived* by the invitee' " (italics added)]; see also *Simmons v. Rhodes & Jamieson, Ltd.* (1956) 46 Cal.2d 190, 194 [293 P.2d 26].) Thus, under the sophisticated user defense, the inquiry focuses on whether the plaintiff knew, or should have known, of the particular risk of harm from the product giving rise to the injury.

#### 2. *Applicability to Negligence and Strict Liability Causes of Action*

■ As noted above, although California law recognizes the differences between negligence and strict liability causes of action (*Anderson, supra*, 53 Cal.3d at p. 987), the sophisticated user defense is applicable to both. As amicus curiae Chamber of Commerce of the United States of America et al. observes, our *Anderson* holding recognizes there is little functional difference between the two theories in the failure to warn context. (See, e.g., Cupp &

Polage, *The Rhetoric of Strict Products Liability Versus Negligence: An Empirical Analysis* (2002) 77 N.Y.U. L.Rev. 874 [noting there is little substantive distinction between negligence and strict liability causes of action in the failure to warn context].)

In addition, as noted, *Fierro*, without discussing the issue in dictum, applied the sophisticated user defense to a strict liability cause of action. (*Fierro, supra*, 127 Cal.App.3d at pp. 865–866.) Likewise, California courts have applied the obvious danger rule to strict liability causes of action. (See *Bojorquez, supra*, 62 Cal.App.3d at pp. 933–934; *Holmes v. J. C. Penney Co., supra*, 133 Cal.App.3d at p. 220.)

Plaintiff asserts that applying the "should have known" prong of the sophisticated user defense incorrectly converts his strict liability cause of action into a negligence cause of action. He claims that if we adopt the sophisticated user defense, we should limit its applicability to strict liability failure to warn claims in which a plaintiff had actual knowledge of the danger in question. Anything less, plaintiff claims, would convert his strict liability failure to warn cause of action "into nothing more than a cause of action for negligence." We disagree.

As plaintiff observes, some states recognize the sophisticated user defense in negligence actions, but reject it in strict products liability cases. (See, e.g., *Russo v. Abex Corp.* (E.D.Mich. 1987) 670 F.Supp. 206, 207 [sophisticated user defense used in negligence cases does not exist under strict liability principles because "seller is duty-bound to warn all foreseeable users," even sophisticated ones]; accord, *Menna v. Johns-Manville Corp.* (D.N.J. 1984) 585 F.Supp. 1178, 1184 [sophisticated user defense applicable to negligence claims only; duty to warn cannot depend on plaintiff's knowledge level or sophistication].) As defendant observes, however, the use of a "should have known" standard does not conflict with principles of strict liability. Strict liability requires " 'a plaintiff to prove only that the defendant did not adequately warn of a particular risk . . . .' " (*Carlin, supra*, 13 Cal.4th at p. 1112.) In the context of the sophisticated user defense, because the intended users are deemed to know of the risks, manufacturers have no obligation to warn, and providing no warning is appropriate. The focus of the defense, therefore, is whether the danger in question was so generally known within the trade or profession that a manufacturer should not have been expected to provide a warning specific to the group to which plaintiff belonged. Consequently, there is no reason why the sophisticated user defense should not be as available against strict liability causes of action as it is for negligence causes of action. In both instances, the sophisticated user's knowledge eliminates the manufacturer's need for a warning.

■ This approach is consistent with the Restatement Second of Torts, section 402A, which addresses strict liability. Comment j instructs that even in cases of strict liability "a seller is not required to warn . . . when the danger, or potentiality for danger, is generally known and recognized." (Rest.2d Torts, § 402A, com. j, p. 353.) In addition, even if the "should have known" standard is considered more closely aligned with a negligence concept, we have repeatedly held that strict products liability law in California may incorporate negligence concepts without undermining the principles fundamental to a strict liability claim. (See, e.g., *Anderson, supra*, 53 Cal.3d at pp. 1002–1003 [requiring manufacturers to warn of dangers that are known or reasonably knowable]; *Daly v. General Motors Corp.* (1978) 20 Cal.3d 725, 734 [144 Cal.Rptr. 380, 575 P.2d 1162] [holding that principles of comparative fault apply in strict products liability actions]; *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 433 [143 Cal.Rptr. 225, 573 P.2d 443] [adopting risk-benefit test for design defect claims and rejecting claim that test improperly introduces an element that " 'rings of negligence' "].)

In *Anderson*, this court stated that "the claim that a particular component 'rings of' or 'sounds in' negligence has not precluded its acceptance in the context of strict liability. . . . [¶] . . . [¶] . . . [T]he strict liability doctrine has incorporated some well-settled rules from the law of negligence and has survived judicial challenges asserting that such incorporation violates fundamental principles of the doctrine." (*Anderson, supra*, 53 Cal.3d at pp. 1001–1002.) *Anderson* agreed that failure to warn claims involve some consideration of the defendant's conduct and do not necessarily focus exclusively on the product's condition. The court recognized that "[i]t may also be true that the 'warning defect' theory is 'rooted in negligence' to a greater extent than are the manufacturing—or design-defect—theories. The 'warning defect' relates to a failure extraneous to the product itself. Thus, while a manufacturing or design defect *can be* evaluated without reference to the conduct of the manufacturer [citation], the giving of a warning cannot. The latter necessarily requires the communicating of something to someone." (*Id.* at p. 1002.)

### 3. *Determining User Sophistication*

■ The relevant time for determining user sophistication for purposes of this exception to a manufacturer's duty to warn is when the sophisticated user is injured and knew or should have known of the risk. (See *Crook v. Kaneb Pipe Line Operating Partnership* (8th Cir. 2000) 231 F.3d 1098, 1102.) As amicus curiae Product Liability Advisory Counsel observes, the Court of Appeal "correctly understood the defense to eliminate any duty to warn when the expected user population is generally aware of the risk at issue, and correctly rejected the argument that a manufacturer's duty to warn should

turn on the individual plaintiff's actual understanding of the risk. Legal duties must be based on objective general predictions of the anticipated user population's knowledge, not case-by-case hindsight examinations of the particular plaintiff's subjective state of mind." As the Court of Appeal pointed out, "[t]he sophisticated user defense will always be employed when a sophisticated user should have, but did not, know of the risk. Otherwise, the issue would be actual knowledge and causation." Therefore, the sophisticated user's knowledge of the risk is measured from the time of the plaintiff's injury, rather than from the date the product was manufactured. The timeline focuses on the general population of sophisticated users and conforms to the defense's purpose to eliminate any duty to warn when the expected user population is generally aware of the risk at issue.

## DISPOSITION

For the reasons explained above, we conclude that the sophisticated user defense applies in California. Like the Court of Appeal, we also conclude that the defense should apply in this case to defeat all causes of action for defendant's alleged failure to warn. As the Court of Appeal observed, defendant presented undisputed evidence that HVAC technicians could reasonably be expected to know of the hazard of brazing refrigerant lines. Plaintiff's expert testified that HVAC technicians knew or should have known of the risk of phosgene at the time defendant manufactured the product in 1965. Defendant's expert testified that throughout his 28 years as an HVAC technician, it was "widely known among HVAC technicians" that when R-22 is heated it can decompose into toxic byproducts that include phosgene. Thus, the danger created by exposing refrigerant to high heat and flame was well known within the community of HVAC technicians to which plaintiff belonged.

Plaintiff's claim that he had read the MSDS for R-22 but did not understand that he should avoid heating R-22 is also without merit. The expert testimony at trial showed that the EPA requires HVAC professionals "to understand the decomposition products of refrigerants at high temperatures." In addition, plaintiff's excuse that he had never heard of phosgene gas and that when he smelled the fresh-cut-grass odor he did not stop or take any precaution, also does not support his claim. As noted above, the study guide informed HVAC technicians that R-22 can form dangerous substances when in contact with high heat, and the MSDS for R-22 informed technicians that the product can decompose and release toxic gases when in contact with heat. The evidence is clear that HVAC technicians knew or should have known of the dangers of R-22 heat exposure.

For all these reasons, we conclude that there is no triable issue of fact regarding applicability of the sophisticated user defense in this case. We therefore affirm the Court of Appeal's judgment.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Levy, J.P.T.,[*] concurred.

---

[*]Associate Justice, Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.