Filed 6/13/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRANCISCO URIARTE, | B244257 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC452512) |
| v. | |
| SCOTT SALES CO. et al., | |
| Defendants and Respondents. | |

—————

APPEALS from judgments of the Superior Court of Los Angeles County.  Joseph E. DiLoreto and Ross M. Klein, Judges.  Reversed with directions.

—————

Metzger Law Group and Raphael Metzger; Simon Greenstone Panatier Bartlett and Brian P. Barrow for Plaintiff and Appellant Francisco Uriarte.

Snider, Diehl & Rasmussen, Stephen C. Snider, Trenton M. Diehl, and Kristina O. Lambert for Defendant and Respondent J.R. Simplot Company.

Schaffer, Lax, McNaughton & Chen, Jill A. Franklin, and Yaron F. Dunkel for Defendant and Respondent Scott Sales Co.

Alexander Law Group and Richard Alexander for the Council for Education and Research on Toxics, Dr. Jerrold Abraham, Dr. Richard W. Clapp, Dr. Ronald Crystal, Dr. David A. Eastmond, Dr. Arthur L. Frank, Dr. Robert J. Harrison, Dr. Ronald Melnick, Dr. Lee Newman, Dr. Stephen M. Rappaport, Dr. David Joseph Ross, and Dr. Janet Weiss as Amici Curiae on behalf of Plaintiff and Appellant Francisco Uriarte.

—————

J.R. Simplot Company (Simplot) and Scott Sales Co. (Scott) supplied silica sand to Francisco Uriarte's employer, for use as sandblasting media. Uriarte filed suit against Simplot and Scott, alleging that the airborne toxins produced by sandblasting with their silica sand caused him to develop interstitial pulmonary fibrosis and other illnesses. Simplot and Scott successfully moved for judgment on the pleadings on the basis of the component parts doctrine, which provides that "the manufacturer of a component part is not liable for injuries caused by the finished product into which the component has been incorporated unless the component itself was defective and caused harm." (*O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 355 (*O'Neil*).)

We reverse with directions to deny Simplot's and Scott's motions. We conclude that because Uriarte's injuries were allegedly caused by the use of the silica sand during the manufacturing process, rather than by the finished product that was produced by that process, the component parts doctrine does not apply. In so concluding, we join *Ramos v. Brenntag Specialties, Inc.* (2014) 224 Cal.App.4th 1239 (*Ramos*) in respectfully disagreeing with the interpretation and application of the component parts doctrine articulated in *Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81 (*Maxton*).

BACKGROUND

According to the allegations of the operative first amended complaint, from approximately 2004 to 2008 Uriarte worked as a sandblaster for Lubeco, Inc. He filed suit against Scott, Simplot, and numerous other defendants, alleging claims for negligence, negligence per se, strict liability for failure to warn, strict liability for design defect, fraudulent concealment, and breach of implied warranties. All of the named defendants allegedly supplied sandblasting media to Lubeco. When Uriarte and his coworkers at Lubeco used that sandblasting media in the manner intended by the media's manufacturers and suppliers, such use allegedly "resulted in the generation and release of toxicologically significant amounts of toxic airborne fumes and dusts," which Uriarte "was thereby exposed to and inhaled." Uriarte alleges that, "[a]s a direct result of said exposure," he "developed interstitial pulmonary fibrosis and other consequential injuries,

2

which will require extensive medical treatment, hospitalizations, and organ transplantation as the disease progresses."

In the "Product Identification" section of his complaint, Uriarte alleged that Scott supplied two kinds of sandblasting media to Lubeco, identified as "Silica Sand #100" and "120 Nevada Mesh White Sand." Simplot allegedly supplied three kinds of sandblasting media, identified as "Silica Sand #100," "120 Nevada Mesh White Sand," and "#110 Sand." Because it appears to be undisputed that all of the sandblasting media in question consisted of silica sand, we will henceforth refer to it as such.

After answering, Scott and Simplot separately moved for judgment on the pleadings. They argued that, under the component parts doctrine as interpreted in *Maxton*, Uriarte's complaint failed to state facts sufficient to constitute a cause of action against them. The superior court agreed, granted the motions without leave to amend, and entered judgments in favor of Scott and Simplot.[1] Uriarte timely appealed from both judgments. We granted Uriarte's motion to consolidate the two appeals.

STANDARD OF REVIEW

On review of a judgment entered on the basis of an order granting a motion for judgment on the pleadings, we must accept as true all properly pleaded material factual allegations of the operative complaint. (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1347.) We must determine whether the alleged facts are sufficient to "support any valid cause of action against [defendants]." (*Ibid.*) If they are, then the motion should have been denied.[2]

---

[1] *Ramos*, which disagreed with *Maxton*, was not decided until after judgment was entered in favor of Scott and Simplot in this action.

[2] Because defendants' only contention is that all of Uriarte's claims fail as a matter of law under the component parts doctrine as interpreted by *Maxton*, we express no opinion on whether any of Uriarte's claims might suffer from other legal defects or be subject to other defenses.

3

DISCUSSION

Uriarte argues that the component parts doctrine does not apply to the alleged facts in this case and that the superior court therefore erred by granting the motions for judgment on the pleadings, which were based solely on that doctrine. We agree.

"The component parts doctrine provides that the manufacturer of a component part is not liable for injuries caused by the finished product into which the component has been incorporated unless the component itself was defective and caused harm." (*O'Neil*, *supra*, 53 Cal.4th at p. 355.) California courts applying the doctrine have largely followed the formulation articulated in section 5 of the Restatement Third of Torts, Products Liability (Restatement Third), which provides as follows: "One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if: [¶] (a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or [¶] (b)(1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and [¶] (2) the integration of the component causes the product to be defective, as defined in this Chapter; and [¶] (3) the defect in the product causes harm." (See, e.g., *O'Neil*, *supra*, 53 Cal.4th at p. 355, citing Rest.3d, § 5; *Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Company* (2004) 129 Cal.App.4th 577, 581-582 (*Tellez-Cordova*).) The relevant chapter of the Restatement Third provides that "[a] product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings." (Rest.3d, § 2.)

By its terms, as articulated in both *O'Neil* and the Restatement Third, the component parts doctrine does not apply to the facts alleged in this case. The component parts doctrine, when it applies, shields a component part manufacturer from liability "for injuries caused by the finished product into which the component has been incorporated." (*O'Neil*, *supra*, 53 Cal.4th at p. 355.) In the words of the Restatement Third, the doctrine

4

concerns "harm to persons or property caused by a product into which the component is integrated." (Rest.3d, § 5.)

Here, Uriarte does not allege that the silica sand supplied by Scott and Simplot was incorporated into finished products that caused him harm—he does not allege that his injuries were caused by Lubeco's finished products at all. Rather, he alleges that Scott's and Simplot's silica sand was used in Lubeco's manufacturing process in the manner intended by Scott and Simplot, and that he was injured in the course of that process by that intended use of the silica sand. The component parts doctrine therefore does not apply.

In addition to being inapplicable by its own terms, the component parts doctrine is inapplicable as a matter of policy. As explained by the Restatement Third, the purpose of the doctrine is to protect sellers of nondefective components by prohibiting the imposition of liability that is based "solely on the ground that the manufacturer of the integrated product utilizes the component in a manner that renders the integrated product defective." (Rest.3d, § 5, com. a, p. 131.) The rationale is that "[i]mposing liability would require the component seller to scrutinize another's product which the component seller has no role in developing" and would "require the component seller to develop sufficient sophistication to review the decisions of the business entity that is already charged with responsibility for the integrated product." (*Ibid.*) That is, if a seller of a nondefective component is going to be held liable for every defective integrated product into which the nondefective component is incorporated, then the component seller, in order to protect itself, will have to develop expertise in the myriad integrated products that might incorporate the component.

No part of that rationale applies here, because Uriarte was not injured by an integrated product into which Scott's and Simplot's silica sand was allegedly incorporated as a component. Rather, he alleges that he was injured by both his use and his coworkers' use of the silica sand in precisely the way intended by its sellers, Scott and Simplot. His theory of liability thus does not require Scott or Simplot to scrutinize Lubeco's products or review Lubeco's business decisions. Scott and Simplot need only

5

scrutinize *their own* products and warn about the scientifically known dangers of using those products in the manner that Scott and Simplot intend them to be used. That is not a novel requirement under California law. (See *Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64-65.)

*Tellez-Cordova*, *supra*, is directly on point. In that case, the plaintiff alleged that "[h]e developed interstitial pulmonary fibrosis as a result of exposure to airborne toxic substances produced and released" by the various sanding and grinding tools with which he worked. (*Tellez-Cordova*, *supra*, 129 Cal.App.4th at p. 579.) In particular, he alleged that "the tools were specifically designed to be used with abrasive wheels or discs," which were "composed of aluminum oxide and other inorganic material," and that "when the tools were used for their intended purpose, respirable metallic dust from the metal being ground and from the abrasive wheels and discs was generated and released into the air, causing the injury." (*Id.* at p. 580.)

The manufacturers of the tools prevailed on demurrer, but the Court of Appeal reversed. (*Tellez-Cordova*, *supra*, 129 Cal.App.4th at p. 582.) The court reasoned that the plaintiff's theory of liability would not require the defendants "to warn of defects in a final product over which they had no control, but of defects which occur when their products are used as intended." (*Id.* at p. 583.) Thus, "[t]he policy reasons" underlying the component parts doctrine "have no application to these allegations. In order to provide warnings, respondents would not have to employ a huge variety of experts, but would only be required to know what happened when their tools were used for their sole intended purpose. . . . Nor, under these allegations, is there a 'finished product manufacturer' in a better position to understand any special adaptation in the completed product and warn of its dangers. Instead, there is a consumer, using the product exactly as respondents intended." (*Id.* at pp. 582-583; see also *O'Neil*, *supra*, 53 Cal.4th at pp. 360-361 [discussing and approving *Tellez-Cordova*, and stating that "[w]here the intended use of a product inevitably creates a hazardous situation, it is reasonable to expect the manufacturer to give warnings"].)

6

The allegations in *Tellez-Cordova* are not materially distinguishable from the allegations in the instant case. The defendants at issue in that case were the manufacturers of the tools that powered certain abrasive wheels and discs, rather than the manufacturers of the wheels and discs. Here, Scott and Simplot supplied the silica sand (which is analogous to the wheels and discs), rather than the sandblaster (which is analogous to the tools), but that is a distinction without a difference. In both cases, the plaintiffs' injuries were allegedly caused by the intended use of the defendants' products in the manufacturing process, not by the finished product that was the result of that process, so the component parts doctrine does not apply and, as a matter of policy, should not apply.

Scott's and Simplot's arguments to the contrary are based entirely upon *Maxton*. In that case, the defendants manufactured and supplied "steel and aluminum ingots, sheets, rolls, tubes and the like." (*Maxton*, *supra*, 203 Cal.App.4th at p. 86.) The plaintiff alleged that he worked for a manufacturer and, in that capacity, "'worked with and around' the metal products manufactured and supplied by defendants." (*Id.* at p. 86.) He further alleged that when the defendants' metal products were melted, cut, ground, and so forth in the course of his employer's manufacturing process, they generated "'toxic airborne metallic fumes and dusts,'" and that his exposure to those fumes and dusts caused him to contract interstitial pulmonary fibrosis and other illnesses. (*Ibid.*) The defendants prevailed, some on demurrer and others on motions for judgment on the pleadings. (*Id.* at p. 87.) The Court of Appeal affirmed on the basis of the component parts doctrine because (1) the defendants' products were raw materials that were not inherently dangerous, (2) the defendants sold their products to a sophisticated buyer (namely, the plaintiff's employer), (3) the defendants' products were substantially changed during the manufacturing process, and (4) the defendants played no role in developing or designing the plaintiff's employer's end products. (*Id.* at pp. 92-94.) The court derived that list of factors from *Artiglio v. General Electric Co.* (1998) 61 Cal.App.4th 830 (*Artiglio*), a case in which women who had received silicone breast implants sued the company that had supplied the silicone to the implant manufacturer.

7

(*Id.* at pp. 833-834.) After surveying various authorities concerning the component parts doctrine and other defenses, including a Proposed Final Draft of the Restatement Third, the *Artiglio* court provided the following summary: "[C]omponent and raw material suppliers are not liable to ultimate consumers when the goods or material they supply are not inherently dangerous, they sell goods or material in bulk to a sophisticated buyer, the material is substantially changed during the manufacturing process and the supplier has a limited role in developing and designing the end product." (*Id.* at p. 839.)[3]

No California case other than *Maxton* has extended the component parts doctrine to apply to injuries caused during the manufacturing process in which the defendant's product was used as intended, rather than injuries caused by the finished product that was the result of that process. Moreover, a recent Court of Appeal decision has declined to follow *Maxton*. In *Ramos*, the plaintiff alleged that he "developed interstitial pulmonary fibrosis as the result of his exposure to, inter alia, fumes from the molten metal and dust from the plaster, sand, limestone and marble" at the foundry where he worked. (*Ramos*, *supra*, 224 Cal.App.4th at p. 1244.) He filed suit against the suppliers of various mold materials and metal products (including, coincidentally, Simplot and Scott). (*Ibid.*) The defendants prevailed on demurrers based on *Maxton*, and the plaintiff appealed. (*Id.* at p. 1245.) The Court of Appeal reversed, respectfully disagreeing with

---

[3]    *Artiglio*'s references to "ultimate consumers" and "the end product" (*Artiglio*, *supra*, 61 Cal.App.4th at p. 839) show that its analysis was intended to be limited to cases involving injuries caused by the finished product rather than during the manufacturing process. (The plaintiffs in *Artiglio* were women who had received breast implants, not workers in the factory that produced the implants.) To that extent, *Artiglio*'s interpretation of the component parts doctrine appears to be consistent with our own.

We also note, however, than *Artiglio*'s reference to "a sophisticated buyer" in connection with a defense applicable to "component and raw material suppliers" (*Artiglio*, *supra*, 61 Cal.App.4th at p. 839) appears to conflate the component parts doctrine with the sophisticated user and sophisticated intermediary defenses. The defenses are distinct and have distinct elements. In particular, the concept of a "sophisticated" party plays no role in the component parts doctrine as articulated by both the Supreme Court and the Restatement Third. (*O'Neil*, *supra*, 53 Cal.4th at p. 355; Rest.3d, § 5.)

8

both *Maxton*'s interpretation of the component parts doctrine and its use of *Artiglio*. (*Id.* at pp. 1253-1253, 1255-1259.) The court reasoned that "on its face, the component parts doctrine does not target claims by a party alleging that he suffered a direct injury from using a product as the supplier specifically intended" (*id.* at p. 1255), that the factors identified in *Artiglio* are "ill suited to assessment" of such claims (*id.* at p. 1257), and that such claims not only "fall[] outside the letter of the component parts doctrine" but "also fall outside the doctrine's rationale" (*ibid.*). For the reasons we have already given, we agree with those conclusions.[4]

We conclude that the component parts doctrine is inapplicable in this factual setting, because Uriarte does not allege that he was injured by a finished product into which Scott's and Simplot's silica sand was incorporated. Rather, he alleges that the use of the silica sand itself, in precisely the way that Scott and Simplot intended it to be used (i.e., as sandblasting media), caused his injuries. The superior court therefore erred by granting the motions for judgment on the pleadings, and the judgments must be reversed.

---

[4] Defendants have not raised a sophisticated user or sophisticated intermediary defense. We accordingly express no opinion on the applicability of those defenses to Uriarte's claims, except to note that the inapplicability of the component parts doctrine does not preclude application of the sophisticated user and sophisticated intermediary defenses.

We also note, however, that we are not persuaded by *Ramos*'s assertion that a product supplier raising a sophisticated intermediary defense must "show that it had some reason to believe the [plaintiff] knew, or should have known, of the product's hazards." (*Ramos*, *supra*, 224 Cal.App.4th at p. 1258.) For example, if the intermediary had actual knowledge of the product's dangers, and the plaintiff's only theory of liability against the product supplier is that the supplier failed to warn the intermediary, then ordinarily the supplier will not be liable. (See *Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 67 ["there is no need to warn of known risks under either a negligence or strict liability theory"].)

DISPOSITION

The judgments are reversed, and the superior court is directed to enter a new and different order denying Scott's and Simplot's motions for judgment on the pleadings. Uriarte shall recover his costs of appeal.

CERTIFIED FOR PUBLICATION.


                                        ROTHSCHILD, Acting P. J.

We concur:



        JOHNSON, J.



        MILLER, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.