Filed 11/13/14  [unmodified opn. attached]

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KIMBRA GOTTSCHALL et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>CRANE CO.,<br><br>      Defendant and Respondent. | A136516<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-10-275486)<br><br>**ORDER MODIFYING OPINION AND DENYING REQUEST FOR DEPUBLICATION**<br>**[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the published opinion filed herein on October 22, 2014, be modified as follows:

On page 8, the first sentence of the fourth paragraph shall be modified to read: "Just last year the *Pfeifer* court made this even clearer when it affirmed a substantial damage award to husband and wife plaintiffs."

This modification does not effect a change in the judgment.

The request for depublication is denied.


Dated: _____                          _____
                                                                            Kline, P.J.

1

Trial Court:                                    Superior Court of San Francisco City and
                                                County

Trial Judge:                                    Honorable Teri L. Jackson

Attorney for Plaintiffs and Appellants:         Brayton Purcell, Alan R. Brayton, Lloyd F.
                                                LeRoy, Richard M. Grant

Attorneys for Defendant and Respondent:         K & L Gates, Michele C. Barnes,
                                                Daniel W. Fox, Michael J. Ross

Filed 10/8/14  Certified for publication 10/22/14 (order attached)  [unmodified version]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KIMBRA GOTTSCHALL et al.,<br><br>          Plaintiffs and Appellants,<br><br>v.<br><br>CRANE CO.,<br><br>          Defendant and Respondent. | A136516<br><br>(San Francisco County<br>Super. Ct. No. CGC-10-275486) |

The heirs and family of decedent Robert Gottschall sued Crane Co. in the San Francisco Superior Court because of Robert's death from mesothelioma, allegedly inflicted on him during his work in shipyards and similar places.  Crane moved for summary judgment on the basis that a Pennsylvania federal court's summary judgment in favor of another manufacturer—a judgment based on application of the "sophisticated user" doctrine—was collateral estoppel of the San Francisco action.  The San Francisco court agreed, and granted summary judgment for Crane.  We reverse, holding that the federal court's resolution of this issue was wrong under California law, and thus collateral estoppel does not apply.

**BACKGROUND**

On February 5, 2010, Robert Gottschall filed a complaint in San Francisco Superior Court against Crane and 17 of the original 18 defendants, all of which had allegedly caused him to develop an "asbestos-related disease" because of the products those defendants produced, and to which he was exposed by his work from 1957 to 1989 in a variety of shipyards and other similar facilities.  Gottschall died, and on August 13,

1

2010, the superior court entered an order substituting his eldest daughter, Kimbra Gottschall, as the personal representative of his estate and his four other children (collectively, appellants). Appellants then filed a first amended complaint against 17 of the original 18 defendants, including Crane.

On November 10, 2010, appellants filed a wrongful death and survival action in the United States District Court for the Northern District of California against six defendants that had not been named in the superior court action. Shortly thereafter, that action was transferred to the United States District Court for the Eastern District of Pennsylvania, which had been designated as the "MDL court," i.e., the court to handle multi-district litigation.

In both of these actions, i.e., the San Francisco Superior Court action and the action transferred to the Pennsylvania federal court, appellants made essentially the same assertions: their father, Robert Gottschall, had been exposed to asbestos-containing products while doing work at various shipyards on U.S. Navy vessels. And appellants' claims in the federal action sounded in negligence and strict liability under California law, claims similar to those made in the San Francisco action.

On December 8, 2011, the Pennsylvania federal court granted summary judgment to defendant General Dynamics Corp., a defendant which had been sued because it had supplied the U.S. Navy vessels with asbestos-containing materials. The Pennsylvania federal court held that under California law the Navy was a "sophisticated user" of asbestos-containing material, and therefore appellants' claims against General Dynamics failed. The Pennsylvania federal court set forth the issue, and its resolution, this way:

"General Dynamics asserts that it is entitled to summary judgment on the basis of the sophisticated user defense because the Navy was a sophisticated user. In asserting this defense, it cites to [*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56 (*Johnson*)], and relies upon the affidavits of Admiral Roger B. Horne, Jr., and Admiral David P. Sargent, Jr., to establish that the Navy had knowledge of asbestos hazards at the time of Decedent's alleged exposure such that it was a sophisticated user.

"In response, Plaintiffs assert that General Dynamics is not entitled to summary judgment on grounds of the sophisticated user defense because (1) General Dynamics has not adduced evidence that Decedent was a sophisticated user, (2) General Dynamics is really arguing for a 'sophisticated intermediary defense' (which is not recognized by California law), since Decedent merely worked on Navy ships as a (presumably) unsophisticated worker, and (3) any policy determination to expand California law to provide a defense under the facts and circumstances (i) is not properly carried out by an MDL court and (ii) involves a fact-specific determination properly handled by a jury and, thus, precluding summary judgment. Plaintiffs attempt to distinguish *Johnson* by noting that the plaintiff in *Johnson* was a certified technician clearly shown to be a sophisticated user, whereas Defendant General Dynamics has provided no evidence that Decedent was sophisticated but instead argues that the Navy was sophisticated. [¶] . . . [¶]

"Decedent's alleged exposure occurred during the time period 1952 through the late 1980s. The affidavit of Admiral Horne indicates that the Navy had state-of-the-art knowledge regarding asbestos hazards, that it had at least some knowledge of the hazards of asbestos by 1950 and that, by early 1971, it had taken affirmative steps to implement a detailed and comprehensive plan for controlling asbestos hazards. . . . Instead, Plaintiffs assert that Defendant has adduced no evidence that Decedent was a sophisticated user and that the Navy's sophistication is irrelevant because the Navy was an 'intermediary' and California does not recognize a 'sophisticated intermediary user' defense. Plaintiffs' argument fails because of the *Johnson* court's explicit approval of the reasoning of the federal court in *In re Related Asbestos Cases*[. *Johnson, supra,*] 43 Cal.4th at 69–70."

On February 29, 2012, Crane filed a motion for summary judgment in the San Francisco Superior Court. Relying on the Pennsylvania federal court's decision, Crane contended that it, too, had supplied asbestos-containing products to the U.S. Navy, and because of the Pennsylvania federal court decision and its application of the "sophisticated user" doctrine, appellants were collaterally estopped from relitigating the issue in the San Francisco Superior Court.

On June 7, 2012, the superior court granted Crane's motion for summary judgment, from which appellants filed a timely appeal.

## DISCUSSION

The parties agree that whether or not the doctrine of collateral estoppel applies is a question of law we review de novo. (See *Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 618 (*Jenkins*); *Roos v. Red* (2005) 130 Cal.App.4th 870, 878.)

"Under California law, collateral estoppel applies only when each of the following conditions are met: 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' [Citation.] The party asserting collateral estoppel bears the burden of establishing these requirements." (*American Continental Ins. Co. v. American Casualty Co.* (2001) 86 Cal.App.4th 929, 943 (*American Continental*); to the same effect, see *Jenkins, supra,* 138 Cal.App.4th at p. 617; and *Silver v. Los Angeles County Metropolitan Transportation Authority* (2000) 79 Cal.App.4th 338, 357 (*Silver*).) Appellants contend that the doctrine of collateral estoppel does not apply here. We agree, as Crane cannot make the requisite showing here.

*Jenkins* is persuasive. There, the fundamental issue was whether Jenkins was a temporary employee. Following a tortuous federal court proceeding, the Ninth Circuit Court of Appeals ruled for Jenkins on that fundamental issue. By contrast, the trial court in Jenkins's state court action ruled for the County, and Jenkins appealed. The Court of Appeal affirmed, in the course of which it rejected Jenkins's claim that the Ninth Circuit ruling was collateral estoppel, holding as follows:

4

"3. *Collateral Estoppel Does Not Apply Here*

"Even though the issue decided by the Ninth Circuit—whether plaintiff was a temporary or a regular employee—is the same in both cases, the federal decision on this question is not binding on this court.

"It is questionable whether the doctrine of collateral estoppel applies to pure questions of law.  (*People v. Conley* (2004) 116 Cal.App.4th 566, 571; see also *In re Pedro C.* (1989) 215 Cal.App.3d 174, 181.)  The issue here—interpretation of the salary ordinance—was one of law.  (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.)  'We have also recognized that public policy considerations may warrant an exception to the claim preclusion aspect of res judicata, at least where the issue is a question of law rather than of fact. [Citations.]'  (*People v. Barragan* (2004) 32 Cal.4th 236, 256.)  [¶] We believe the Ninth Circuit's construction of California law is wrong."  (*Jenkins, supra,* 138 Cal.App.4th at pp. 621–622.)  After going on to explain why, the Court of Appeal concluded as follows:  "For this reason, we conclude that the doctrine of collateral estoppel should not be applied here to preclude litigation of the proper interpretation of the County's salary ordinance."  (*Id.* at p. 622.)

*American Continental* made this same point, in the following language: "Certainly, the doctrine of collateral estoppel cannot be utilized to bind a California litigant to a principle of law adopted in the prior foreign court litigation which is contrary to the law of California; nor can it be utilized to preclude a party from litigating a novel issue of law in California, merely because that party had failed to persuade the courts of another state on the legal wisdom of its position.  This is particularly true where, as here, it appears that the foreign court based its decision, at least in part, on *its* interpretation of California authority."  (*American Continental, supra,* 86 Cal.App.4th at p. 945, fn. omitted.)

The Pennsylvania federal court clearly understood that California law was controlling, specifically stating that it "will apply California law in deciding General Dynamic Corp.'s Motion for Summary Judgment."  But its application of California law

5

was wrong, as any reading of the evolution of California's sophisticated user defense demonstrates.

Our Supreme Court first endorsed the doctrine of "sophisticated user" in 2008, holding in essence that users of products that could be seen as potentially dangerous cannot hold the producers of those products liable if those users were clearly knowledgeable about the product being used and its potential danger. It was in *Johnson, supra,* 43 Cal.4th 56, where a unanimous court held as follows:

"The sophisticated user defense exempts manufacturers from their typical obligation to provide product users with warnings about the products' potential hazards. [Citation.] The defense is considered an exception to the manufacturer's general duty to warn consumers, and therefore, in most jurisdictions, if successfully argued, acts as an affirmative defense to negate the manufacturer's duty to warn. [Citation.]

"Under the sophisticated user defense, sophisticated users need not be warned about dangers of which they are already aware or should be aware. [Citation.] Because these sophisticated users are charged with knowing the particular product's dangers, the failure to warn about those dangers is not the legal cause of any harm that product may cause. [Citation.] The rationale supporting the defense is that 'the failure to provide warnings about risks already known to a sophisticated purchaser usually is not a proximate cause of harm resulting from those risks suffered by the buyer's employees or downstream purchasers.' (*Ibid*.) This is because the user's knowledge of the dangers is the equivalent of prior notice. [Citation.]

"As we explain further below, the sophisticated user defense evolved out of the Restatement Second of Torts, section 388 (section 388) and the obvious danger rule, an accepted principle and defense in California. [Citations.] In addition . . . the defense applies equally to strict liability and negligent failure to warn cases. The duty to warn is measured by what is generally known or should have been known to the class of sophisticated users, rather than by the individual plaintiff's subjective knowledge. [Citation.]" (*Johnson, supra,* 43 Cal.4th at pp. 65–66.)

6

*Johnson* was an action by a trained and certified heating, ventilation, and air condition (HVAC) technician who sued a manufacturer of air conditioning equipment, based on the manufacturer's failure to warn of the potential hazards of exposure to R-22, a hydrochlorofluorocarbon refrigerant. The manufacturer presented undisputed evidence—including from both side's experts—that HVAC technicians could reasonably be expected to know of the hazard. In short, the danger created by exposing refrigerant to high heat and flame was well known within the community of HVAC technicians to which plaintiff belonged. (*Johnson, supra,* 43 Cal.4th at pp. 63,64, & 75.) That was the evidence that caused Johnson to lose: he was a sophisticated user.

There is no such evidence here. And *Johnson*, the only authority on which the Pennsylvania federal court relied, has no application to the facts here, as illustrated by *Stewart v. Union Carbide Corp.* (2010) 190 Cal.App.4th 23, 28–30 (*Stewart*); and *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1290-1298 (*Pfeifer*).

*Stewart*—a case heavily relied on by appellants and not even mentioned in respondent's brief—arose out of a multi-million dollar judgment in favor of a former plumber who had contracted mesothelioma after working on many construction projects near drywallers who regularly used a joint compound supplied to the drywallers by appellant Union Carbide that contained asbestos. (*Stewart, supra,* 190 Cal.App.4th at pp. 25–26.) On appeal, Union Carbide argued that the trial court had erred in not instructing the jury that, pursuant to *Johnson*, " 'the sale of a raw material to a sophisticated intermediary purchaser who knew or should have known of the risks of that raw material cannot be the legal cause of any harm the raw material may cause.' " (*Id.* at p. 28.) The Court of Appeal disagreed, holding as follows: "*Johnson* did not impute an intermediary's knowledge to the plaintiff, or charge him with any knowledge except that which had been made available to him through his training and which, by reason of his profession and certification, he should have had. In contrast, Union Carbide's proposed instruction is not based on the theory that Larry Stewart had the opportunity to acquire any knowledge of the dangers of asbestos, let alone the obligation to do so. Instead, it contends that its customers, Hamilton and USG, knew or should have known (from

7

public sources) of the dangers of asbestos, and that its duty to warn Stewart is measured by the knowledge Hamilton and USG should have had. It is apparent that such a theory has nothing to do with *Johnson*. [¶] . . . [¶]

"Union Carbide cites authority involving the liability of a supplier to an employee of a sophisticated purchaser who is the employer. The employer-employee relationship is different than the relationship between a sophisticated user intermediary and an unknown number of nonemployees who may at some point work with the sophisticated purchaser's product.

"We note, too, that although Union Carbide alludes to the sophisticated intermediary doctrine, that doctrine, where it applies at all, applies only if a manufacturer provided adequate warnings to the intermediary. [Citations.] Union Carbide did not seek an instruction under that theory, but instead argued that it was entitled to rely on intermediaries to acquire their own knowledge and to provide their own warnings. We see no basis in law for such an instruction. Union Carbide gave no warning and could not therefore rely upon the intermediary, even if sophisticated, to pass on or give warnings. If both Union Carbide and the sophisticated intermediary failed to give warnings, that should not absolve Union Carbide of responsibility." (*Stewart, supra,* 190 Cal.App.4th at pp. 28–30.)

In short, the *Stewart* court concluded that *Johnson* did not impute an intermediary's knowledge to the plaintiff, or charge him with any knowledge except that which had been made available to him through his training and which, by reason of his profession and certification, he should have had. Crane produced no such evidence here.

Just last year the *Pfeifer* court made this even clearer when it affirmed a substantial damage award to husband and wife plaintiffs—who, not incidentally, had sued Crane. Plaintiffs William and Anne Pfeifer sued Crane, Inc. (referred to as JCI in the court's opinion), alleging that William's mesothelioma was caused by his work with JCI gaskets and packing during his tenure in the Navy from 1963 to 1970, and while he was a civilian employee repairing boilers from 1971 to 1982. At trial, JCI's corporate representative testified that in 1981 JCI created a gasket safety data sheet for distribution

8

to its employees which stated that overt exposure to asbestos caused asbestosis and cancer. Customers only received a copy upon request. In 1983, JCI first began placing warnings on its products regarding the hazards of asbestos. (*Pfeifer, supra,* 220 Cal.App.4th at p. 1282.)

JCI submitted a proposed instruction on the "sophisticated user" defense, stating that JCI was not liable for its failure to warn William regarding the hazards of asbestos because the Navy had greater knowledge of those hazards than JCI. The trial court rejected the instruction and directed a verdict barring the application of the proposed sophisticated user defense. The jury returned special verdicts in favor of the Pfeifers for more than $21 million dollars. JCI appealed on several grounds, including that the trial court erred in both rejecting JCI's instructions regarding its "sophisticated user" defense, and directing a verdict on the defense. (*Pfeifer, supra,* 220 Cal.App.4th at pp. 1283-1284, & 1292.)

Rejecting that argument, the Court of Appeal noted that the Supreme Court's opinion in *Johnson* did not involve a "sophisticated user intermediary," and thus, as *Stewart* had noted, "the Supreme Court did not expressly authorize the imputation of an intermediate sophistication to the ultimate user [citing *Stewart*]. Furthermore, an examination of *Johnson* establishes that the court recognized the issue now before us, but did not decide it." (*Pfeifer, supra,* 220 Cal.App.4th at p. 1295.) On the following page, the *Pfeifer* court reiterated that our Supreme Court had "declined to decide whether a plaintiff's employment or servant relationship with a sophisticated intermediary user necessarily shields the defendants from liability." (*Id.* at p. 1296) *Pfeifer* then directly addressed that issue, holding as follows:

"We therefore turn to that issue. In our view, to the extent *Johnson* provides guidance on the issue, it impliedly repudiates JCI's contention. As noted above . . . the Supreme Court concluded that " 'under the sophisticated user defense, the inquiry focuses on whether the *plaintiff* knew, or should have known, of the particular risk of harm from the product giving rise to the injury.' " (*Johnson, supra*, 43 Cal.4th at p. 71,

9

italics added.)  Thus, in actions by employees or servants, the critical issue concerns their knowledge (or potential knowledge), rather than an intermediary's sophistication.

"This conclusion flows directly from [Restatement Second of Torts] section 388 itself.  Under section 388, a supplier of a dangerous item to users 'directly or through a third person' is subject to liability for a failure to warn, when the supplier 'has no reason to believe that those for whose use the [item] is supplied will realize its dangerous condition.'  Accordingly, to avoid liability, there must be some basis for the supplier to believe that the ultimate user knows, or should know, of the item's hazards.  In view of this requirement, the intermediary's sophistication is not, as matter of law, sufficient to avert liability; there must be a sufficient reason for believing that the intermediary's sophistication is likely to operate to protect the user, or that the user is likely to discover the hazards in some other manner.  The fact that the user is an employee or servant of the sophisticated intermediary cannot plausibly be regarded as a sufficient reason, as a matter of law, to infer that the latter will protect the former.  We therefore reject JCI's contention that an intermediary's sophistication invariably shields suppliers from liability to the intermediary's employees or servants." (*Pfeifer, supra,* 220 Cal.App.4th at pp. 1296–1297, fn. omitted.)

The *Pfeifer* court then concluded its rejection of JCI's argument, stating that "The trial court thus properly declined to give JCI's proposed instructions, as they erroneously stated that employees of a sophisticated user are, by virtue of their employment, deemed to be sophisticated users." (*Pfeifer, supra,* 220 Cal.App.4th at pp. 1297-1298.)

As *Johnson, Stewart,* and *Pfeifer* demonstrate, the Pennsylvania federal court was wrong in ruling as it did.  Necessarily, the San Francisco Superior Court was wrong in holding that appellants were collaterally estopped by the Pennsylvania federal court's decision.

An additional reason to reject application of collateral estoppel against appellants here is that it would work an injustice.  As Witkin describes it, "Application of the doctrine of collateral estoppel to questions of law is largely recognized by dicta.  Most of the cases apply the sweeping exception declared in the first Restatement that 'in any

10

event it is not conclusive if injustice would result.' (See *Louis Stores v. Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 757; *Chern v. Bank of America* (1976) 15 Cal.3d 866, 872; *Bleeck v. State Bd. Of Optometry* (1971) 18 Cal.App.3d 415, 430; 9 Cal. Western L.Rev. 115 [avoiding collateral estoppel in multiple party tort litigation].) [¶] The Second Restatement of Judgments, § 28(2) states a similar exception: 'to avoid inequitable administration of the laws.' (See Rest. 2d Judgments, § 28, Comment c; *Rutherford v. California* (1987) 188 Cal.App.3d 1267, 1282.)" (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 443, p. 1097.)

One last observation is apt: this was not, as Crane contends in the first section of its brief, a case involving a "split" cause of action. Although Crane suggests that "this case involves issue, and not claim, preclusion," it contends the action involves the "splitting" of a cause of action, because appellants sought relief from some defendants in the Pennsylvania federal court and from others in this action in California state court. We disagree. As noted at the beginning of our opinion, while this action and the federal court action both involved the decedent's death from mesothelioma, the actions were brought against different producers of asbestos-containing materials, with different defendants involved in the two actions. That is not a splitting cause of action. Again, Witkin is apt: "If the defendants are both jointly and severally liable, joinder is not mandatory but permissive, and the plaintiff, although he or she has but one cause of action, may sue one defendant first and another later. Despite the theoretical incongruity, the plaintiff is not barred in the second action because the defense of res judicata is available only when both the cause of action *and the parties* are the same." (4 Witkin, *supra,* Pleading, § 65, p. 124, italics added; see also 7 Witkin, Cal. Procedure, *supra,* Judgment, § 452.)

## DISPOSITION

The judgment is reversed and the case remanded to the trial court with instructions

11

to vacate its order granting summary judgment for Crane and enter an order denying Crane's motion for summary judgment.

                                      _____
                                      Richman, J.

We concur:

_____
Kline, P.J.

_____
Brick, J.[*]

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KIMBRA GOTTSCHALL et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>CRANE CO.,<br><br>      Defendant and Respondent. | A136516<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-10-275486) |

**THE COURT:**

The opinion in the above-entitled matter filed on October 8, 2014, was not certified for publication in the Official Reports.  For good cause appearing and pursuant to California Rules of Court, rule 8.1105, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.


Dated: _____                    _____

                                                                    Kline, P.J.

1

| | |
|---|---|
| Trial Court: | Superior Court of San Francisco City and County |
| Trial Judge: | Honorable Teri L. Jackson |
| Attorney for Plaintiffs and Appellants: | Brayton Purcell, Alan R. Brayton, Lloyd F. LeRoy, Richard M. Grant |
| Attorneys for Defendant and Respondent: | K & L Gates, Michele C. Barnes, Daniel W. Fox, Michael J. Ross |